UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RONNIE WILLIAMS,

     Plaintiff,                             Hon. Robert J. Jonker

v.                                      Case No. 1:17-cv-1147-RJJ-PJG

STATE FARM FIRE AND CASUALTY
COMPANY,

     Defendant.

_____/

## <u>MEMORANDUM</u> <u>OPINION</u>

This case has become mired in a discovery dispute, largely due to Plaintiff's failure to take his discovery obligations seriously. Presently before the Court is Defendant's motion to compel production of Plaintiff's iPhone 7 Plus and to sanction Plaintiff for his violation of the Court's previous order (*see* ECF No. 39) to produce that cell phone for forensic analysis. (ECF No. 55). Plaintiff filed no response.[1] The Court conducted two evidentiary hearings on the pending motion. (Minutes, ECF No. 69, 72).

_____

[1] Plaintiff sent an unsigned letter, dated June 3, 2019, to Chief Judge Robert Jonker regarding Defendant's motion to compel and for sanctions. (*See* ECF No. 68-1). Judge Jonker advised Plaintiff that his *ex parte* letter could not be considered, and directed Plaintiff how to file a proper response to the motion. (ECF No. 68). Plaintiff elected not to follow Judge Jonker's instructions.

Having considered all the evidence, and for the reasons articulated below, the Court finds that plaintiff intentionally disposed of his iPhone 7 Plus cell phone to avoid his discovery obligations. Accordingly, and for the reasons articulated below, the Court will grant Defendant's motion to compel. As for Defendant's motion for sanctions, the Court will grant it in part, deny it in part, and dismiss the remainder of the motion without prejudice. The Court will sanction Plaintiff in the form of awarding Defendant's reasonable costs and fees in bringing the instant motion (ECF No. 55), as well as those reasonable costs and fees Defendant incurred after February 4, 2019, associated with its earlier motion to compel (ECF No. 28), including the expense of the forensic analysis.

## **Procedural History**

Plaintiff Ronnie Williams filed suit in Kent County Circuit Court, claiming breach of contract and bad faith refusal to settle a claim relating to the alleged burglary of his home on November 27, 2016. (ECF No. 1-1, PageID.7-11). Defendant State Farm had denied the claim under the concealment or fraud provision of Plaintiff's insurance policy, contending that Plaintiff had "intentionally misrepresented and concealed material facts and circumstances relating to [the claimed] loss which bars [his] claim and voids the policy effective November 27, 2016." (ECF No. 1-1, PageID.13). Defendant removed the case to this Court under diversity of citizenship jurisdiction. (ECF No. 1). The bad faith claim was later dismissed by stipulation of the parties. (ECF No. 11).

Defendant asserts that Plaintiff misrepresented a number of material facts relating to the alleged burglary, including "the circumstances surrounding the alleged burglary and theft," Plaintiff's "whereabouts at the time of the alleged theft," and his "cell phone records." (Answer, ECF No. 9, PageID.55). Defendant contends that Plaintiff's claim is barred by his commission of common law fraud. (*Id.* at 56).

On July 26, 2018, Defendant served discovery requests seeking information about any cell phone Plaintiff owned or possessed in November 2016, including the brand and model of the phone, the carrier, and the phone number assigned. (Def's Interrog. 6, ECF No. 28-1, PageID.134). Defendant also asked Plaintiff to produce copies of "any and all call/texting logs for October 1, 2016 – December 31, 2016," and "all text messages from November 24-28, 2016." (Def's Interrog. 6(f), (g), PageID.134).

Plaintiff responded on September 7, 2018, identifying the only cell phone he owned or possessed during the relevant time frame as an Apple iPhone 7 Plus, with Sprint as the carrier. Plaintiff stated that he had no call/texting logs (apart from billing records already produced), and that his counsel intended to serve Sprint with a subpoena to obtain the remainder of the records. (Pltf's Resp. to Interrog. 6(f), ECF No. 32-1, PageID.154-55). And in response to the request for the text messages, Plaintiff stated:

> Plaintiff does not have a copy of all text messages from November 24-28, 2016. The iPhone 7 Plus telephone he had in November 2016 was subsequently stolen and he is unable to access the text messages that were made from and stored on that telephone. Plaintiff will work with counsel in an attempt to obtain the text messages from Apple, but it is uncertain whether they are available.

(Pltf's Answer to Interog. 6(g) at PageID.155).

3

Defendant noticed Plaintiff's deposition for November 13, 2018, which included a request that Plaintiff produce at the deposition "[a]ny and all cellular telephones in his ownership or possession on or about [] November 27, 2016[,] and any and all cellular telephones currently in his ownership or possession. (ECF No. 28-1, PageID.120-21). During the deposition, Plaintiff objected to the examination of his cell phone. (Pltf's Dep. at 7-9, ECF No. 28-1, PageID.125-27). Defendant's counsel (Devin Day) advised Plaintiff of his intention to seek a court order compelling the production of information from Plaintiff's cell phone. (*Id.* at PageID.125). Counsel also advised Plaintiff of his duty to preserve the evidence on his cell phones:

> [Mr. Day]: But I'll say to Mr. Williams, your phone and phones are evidence. And it's important that you don't erase anything, alter anything, destroy anything electronically or otherwise with regard to the phones. That's evidence and needs to be preserved. Okay?
>
> [Plaintiff]: They already subpoenaed phone records. They have the phone records. I provided phone records. So with that being said, that's more than enough. I mean –
>
> [Mr. Day]: I understand you may think that. But there's more information that I'm interested in.
>
> [Plaintiff]: Oh, well, I don't have that phone anymore.
>
> [Mr. Day]: It doesn't matter whether you have the device.
>
> [Plaintiff]: Right.
>
> [Mr. Day]: But do you understand what I've said about it being evidence?
>
> [Plaintiff]: Right. I understand.

(*Id.* at PageID.125-26).

On December 14, 2018, Defendant filed a motion to compel discovery. (ECF No. 28). Specifically, Defendant sought an order requiring Plaintiff "to produce his cell phone for forensic download of data and information relevant to this litigation." (*Id*. at PageID.108). Defendant contended that the cell phone data is relevant:

> [I]t contains information regarding Plaintiff's whereabouts at or around the time of the alleged theft including GPS data and Wi-Fi connectivity, the content of text messages sent and received at or around the time of the alleged theft, the content of internet searches at or around the time of the alleged theft, and voicemails and missed/made telephone calls.

(*Id*.). Defendant's counsel noted that a cell phone forensic expert had advised "that the data from the stolen phone may still be recovered from online sources and the replacement telephone itself." (*Id*. at PageID.110).

On February 7, 2019, the Court held a hearing on Defendant's motion to compel. (Minutes, ECF No. 38). The hearing had been noticed a week earlier, on January 31, 2019. (Notice, ECF No. 37). Immediately following that hearing, the Court granted the motion to compel, in part, ordering that a forensic analysis of Plaintiff's cell phone be conducted pursuant to a protective order. (ECF No. 39).

The parties submitted a stipulated protective order, which was granted by the Court on February 21, 2019. (ECF No. 41). Pursuant to that order, forensic analyst Brandon Fannon was to perform a forensic download of Plaintiff's cell phone(s) and iCloud account(s), and he was to prepare a mirror image of any data or information obtained. (*Id*. at PageID.182-83). The analyst was to capture, for the time period October 29, 2016, to December 24, 2016, the following: photographs and videos; text messages; voicemail messages; GPS location information; Wi-Fi connectivity

information; web search and internet browsing information, using designated search terms; and social media posts. (*Id.* at PageID.183-84). Photographs, videos, and other information of a personal nature were to be redacted with a description of the redacted material provided. (*Id.*). Plaintiff's counsel had fourteen days to review the forensic report for potential objections prior to its dissemination to Defendant's counsel. (*Id.* at PageID.185).

On May 22, 2019, Plaintiff's counsel filed a motion to withdraw as legal counsel, citing Plaintiff's failure to pay his attorney's fees and expenses. (ECF No. 44). That same day, the parties filed a joint motion to adjourn the trial and final pretrial conference (Motion, ECF No. 47), citing an ongoing dispute over the data extraction of Plaintiff's cell phone. (Brief, ECF No. 48, PageID.202-03). Defendant filed the pending motion to compel and for sanctions on May 28, 2019. (ECF No. 55).

A hearing was held on May 30, 2019, on Plaintiff counsel's motion to withdraw and the joint motion to adjourn the trial and final pretrial dates. (Minutes, ECF No. 65). During that hearing, Plaintiff advised the Court that he had terminated the services of his attorney. Accordingly, the Court granted Plaintiff counsel's motion to withdraw, as well as the motion to adjourn the trial and final pretrial dates. (ECF No. 66). The Court set a June 18, 2019, hearing on Defendant's motion to compel and for sanctions, and it directed Plaintiff to file a written response to the motion no later than June 11. (*Id.*). Plaintiff filed no such response, sending an *ex parte* letter to Judge Jonker instead (*see* footnote 1, *supra*).

6

On June 18, 2019, the Court held the first of two evidentiary hearings on the pending motion. (Minutes, ECF No. 69). Plaintiff testified, along with forensic analyst Brandon Fannon. (*Id.*). Based on Plaintiff's testimony, the Court determined that it needed to consider additional documentary evidence. (*See* 6/18/19 Order, ECF No. 70). Accordingly, the Court ordered Plaintiff to obtain and produce "[a]ny and all police reports or other documents relating to the theft of plaintiff's iPhone 7 Plus in the Summer of 2018," and "[a]ny and all records and receipts concerning [Plaintiff's] purchase of an iPhone XR on or about February 4, 2019, including any documents regarding the iPhone 7 Plus he exchanged at that time." (*Id.* at PageID.350). Plaintiff filed copies of these documents on June 27, 2019. (ECF No. 71).

On July 9, 2019, the Court conducted a second hearing regarding Defendant's motion to compel and for sanctions. (Minutes, ECF No. 72). Plaintiff and Defendant's counsel appeared and were heard. The motion was taken under advisement pending receipt of transcripts of the hearing.

## **Relevant Facts**

1.     Relevant Events Surrounding the Alleged Burglary

Plaintiff claims that his home was burglarized on Sunday, November 27, 2016, and that personal property worth more than $50,000 was stolen. (Complaint at ¶¶ 6, 9). He alleges that he was at work at the time of the burglary, and that his brother called him on his cell phone around 5:30 p.m. that day to advise him that his home had been burglarized. (6/18/19 Hrg Tr. at 30, ECF No. 74, PageID.418). Phone records contradict Plaintiff's contention, however, indicating that Plaintiff had

initiated the phone call that day with his brother. (*See id.* at PageID.401). Plaintiff used his cell phone to call the Albion police station to report the burglary, but he would not allow any officer to come to his house. (*Id.* at PageID.418-19, 427-28). Plaintiff worked the remainder of his shift that day, returning home around midnight. (*Id.* at PageID.425-27).

Plaintiff contends that he attended a poker game early Sunday morning, November 27, 2016, from approximately 1:00 a.m. to 7:00 a.m. But he states that he cannot remember the street number of the residence in which the poker game was played. Moreover, other than that the host of the game went by "Eric B," Plaintiff states that he does not know the names of any of the participants of the poker game. (*Id.* at PageID.417; Pltf's Answer to Interog. 11, 6/18/19 Hrg Exh. B).

Plaintiff alleges that, after the poker game, he went to his girlfriend Shanisha Wallace's house, and stayed there until he went to work that day. (*Id.* at PageID.417, 419). Ms. Wallace has contradicted Plaintiff. She testified in her deposition that she had broken up with Plaintiff two years earlier and that Plaintiff had not stayed at her house on November 26 or 27, 2016. (Wallace Dep. at 15, 25, 6/18/19 Hrg Exh. C).

2.    <u>Relevance of, and Efforts to Obtain, Evidence from Plaintiff's Cell Phone</u>

Forensic analyst Brian Fannon submitted a report and an affidavit that was filed with Defendant's motion to compel and for sanctions. (ECF No. 55-1, PageID.297-304). In his report, Mr. Fannon noted that he performed a download of Plaintiff's cell phone, an iPhone XR, and a download of Plaintiff's iCloud account on Yahoo.com. (ECF No. 55-1 at PageID.297). Through this process, Mr. Fannon

learned that Plaintiff's iCloud account had been connected to three cell phones in the past five years:

- An iPhone 5s from January 14, 2014, to November 13, 2016;

- An iPhone 7 Plus from November 15, 2016, to February 2, 2019;[2] and

- An iPhone XR from February 4, 2019, to the present.

(*Id.* at PageID.298). Mr. Fannon was able to recover only one photograph that was taken by Plaintiff's cell phone during the October 29, 2016, to December 24, 2016, time period set by the protective order – that photograph being irrelevant to the litigation. (*Id.* at PageID.299). Mr. Fannon determined that approximately 27 photographs were taken during the relevant time period, but later deleted. (*Id.*).

In his affidavit, Mr. Fannon testified that, on March 7, 2019, Plaintiff produced one cell phone for analysis – an iPhone XR that was first connected to Plaintiff's iCloud account on February 4, 2019. (ECF No. 55-1, PageID.303). The iPhone 7 Plus that Plaintiff had been using was disconnected from Plaintiff's iCloud account on February 2, 2019. (*Id.*). Mr. Fannon noted that the extraction of Plaintiff's iPhone XR and his iCloud account recovered 19,677 images, but only one image was found for the time period October 29 to December 24, 2016. (*Id.*). He also noted that 27 photographs taken during the relevant time period had been deleted from the cell

_____

[2] During his June 18, 2019, hearing testimony, Mr. Fannon corrected the information from this report. He noted that he had later learned that Plaintiff used two iPhone 7 Plus cell phones during the period November 15, 2016, to February 2, 2019, having replaced one for the other in July 2018. (6/18/19 Hrg Tr. at 57-58, ECF No. 74, PageID.458).

phone. (*Id*. at PageID.304).

During the June 18 hearing, Mr. Fannon testified that he was present during Plaintiff's November 13, 2018, deposition to conduct a download of his cell phone, but he was informed at that time that the download could not be performed because Plaintiff objected to the procedure. (6/18/19 Hrg Tr. at 57-58, ECF No. 74, PageID.445-46). Mr. Fannon stated that, when Plaintiff produced his iPhone XR for analysis (on March 7, 2019), he did not mention that it had been newly purchased; nor did Plaintiff provide any information regarding the fact that he had exchanged the iPhone 7 Plus cell phone he possessed at the time of his deposition for the new cell phone. (*Id*. at PageID.446). Plaintiff provided the passwords necessary to retrieve whatever information was on the iPhone XR, including records of phone calls, text messages, photographs, social media activity, internet browsing history, and GPS location information. (*Id*. at PageID.448-49). Mr. Fannon testified to his efforts to retrieve information from Plaintiff's iCloud account. He confirmed the results of the cell phone and iCloud searches, as reflected in his report, including that 27 photographs taken during the relevant time period had been deleted, and that he was unable to find any text messages and call logs. (*Id*. at PageID.450-51, 462-63).

Mr. Fannon testified that applications exist to transfer information from one iPhone to another as a result of a new purchase. (*Id*. at PageID.452). He noted that, "if someone wanted to replace their phone . . . they could still preserve the evidence by using the iCloud to back up that evidence." (*Id*. at PageID.468). Mr. Fannon opined that, if such transfer of information had not been done, and the information

had not been backed up to the iCloud, it would be lost. (*Id.* at PageID.452-53). Mr. Fannon also opined, based on his analysis, that the information from Plaintiff's iPhone 7 Plus had not been transferred to the iPhone XR he acquired on February 4, 2019. (*Id.* at PageID.454, 457). Accordingly, Mr. Fannon would have to have access to the iPhone 7 Plus Plaintiff traded in on February 4, 2019, or the iPhone 7 Plus Plaintiff possessed on the date of the alleged burglary, to recover the deleted information. (*Id.* at PageID.463-64).

Plaintiff testified during the June 18, 2019, hearing. He reiterated his contention that his home was burglarized on Sunday, November 27, 2016, and that his jewelry was stolen at that time. (6/18/19 Hrg Tr. at 10, ECF No. 74, PageID. 398). He acknowledged that his whereabouts on the date of the alleged burglary, as well as cell phone calls he made and received that day, are significant issues in the case. (*Id.* at PageID.400-01). Plaintiff further acknowledged that he had his only cell phone, an Apple iPhone 7 Plus, with him at all times the weekend of the alleged burglary, and that he knew it could be used to track his location. (*Id.* at PageID.404, 410, 419). He conceded, in fact, that the cell phone he possessed the day of the alleged burglary may have very important evidence on it. (*Id.* at 411-12).

Plaintiff acknowledged having received a letter from State Farm, dated March 14, 2017. In this letter the insurance company sought all records from any cell phone he used from November 20, 2016, through November 30, 2016, including call history details, text messages, and cell tower location information. (6/18/19 Hrg Tr. at 11-12, ECF No. 74, PageID.399-400; 6/18/19 Hrg Exh. A (copy of letter)).

In an interrogatory answer, Plaintiff stated that the iPhone 7 Plus cell phone he possessed at the time of the alleged burglary was stolen.[3] (Pltf's Answer to Interog. 6, 6/18/19 Hrg. Exh. B; 6/18/19 Hrg Tr. at 18-19, PageID.406-07). But in his November 13, 2018, deposition, Plaintiff testified that he no longer had that cell phone because he had dropped it several times, rendering it unusable. (6/18/19 Hrg Tr. at 18, 21, PageID.406, 409).

As ordered by this Court, Plaintiff obtained and filed a copy of a Jackson City Police Department report indicating that Plaintiff reported his iPhone 7 cell phone stolen from his girlfriend's house on July 23, 2018. (ECF No. 71, PageID.355-56). According to the report, Plaintiff would not provide the police department with the names of other persons in the house at the time of the phone's disappearance, nor did he want any officer to go to the house.[4] (*Id.* at PageID.356).

By his own admission, Plaintiff is not certain that someone stole his cell phone in July 2018. (*See* 7/9/19 Hrg Tr. at 9, ECF No. 73, PageID.367 ("I think it was stolen.")). He simply surmises it because he repeatedly looked for the phone and could not find it – "[it] was missing." (7/9/19 Hrg Tr. at 7, ECF No. 73, PageID.365).

Plaintiff testified during the June 18, 2019, hearing that, when he replaced his "stolen" iPhone 7 Plus with another in July 2018, the data from the old phone was

---

[3] Plaintiff acknowledged that he signed his interrogatory answers under penalty of perjury. (6/18/19 Hrg Tr. at 14, ECF No. 74, PageID.402).

[4] Plaintiff wanted the police department to "ping" his cell phone, but the department declined, citing "the lack of emergency status of the incident." (ECF No. 71, PageID.356).

transferred to the new. He stated that all the data that was on his iPhone 7 Plus from November 2016 would be on the iPhone 7 Plus he purchased in July 2018. (6/18/19 Hrg Tr. at 83, ECF No. 74, PageID.471, 473).

On February 4, 2019, Plaintiff traded in the iPhone 7 Plus he purchased the previous July for a new iPhone XR. (Apple Eastwood Towne Center Receipt, ECF No. 71, PageID. 352-54). He paid $749.00 for the new iPhone XR, and he received a $300.00 trade-in credit for his iPhone 7 Plus. (*Id.* at PageID.353).

During the June 18, 2019, hearing, Plaintiff testified that he purchased the new iPhone XR because his iPhone 7 Plus was damaged to the point it was no longer working. (6/18/19 Hrg Tr. at 44-46, PageID.432-34). Plaintiff specifically noted that the iPhone 7 Plus had fallen to the floor and that the face of the phone was "cracked all up." (*Id.* at PageID. 434). Plaintiff acknowledged that this iPhone 7 Plus was the cell phone he had with him at his November 13, 2018, deposition, and which Defendant sought to access. Plaintiff also conceded that it was the same phone Defendant's counsel had advised him to preserve. (*Id.* at PageID.433).

The Apple store receipt contradicts Plaintiff's testimony that the iPhone 7 Plus he traded in was damaged. The receipt indicates that the cell phone was in good working order. It had "[n]o cracks or LCD fractures," and it had no more than "surface scratches that do not affect the touchscreen functionality or readability." (ECF No. 71, PageID.352).

Nevertheless, and having been confronted with the information on the receipt, Plaintiff continued to maintain that the iPhone 7 Plus he traded in was "all cracked

up." (7/9/19 Hrg Tr. at 11, ECF No. 73, PageID.369). He dismissed the information on the receipt, contending: "That's what every receipt says." (*Id.* at PageID.370). He also contended that the Apple store gave everyone a $300 credit, regardless of the condition of the cell phone turned in. (*Id.* at PageID.371). Plaintiff admitted, however, that he had no evidence to support his contentions regarding the purported inaccuracies on the receipt or the unconditional $300 credit. (*Id.*). When the Court offered him an opportunity to obtain evidence from the Apple store to support his contention that the iPhone 7 Plus was damaged, Plaintiff declined. (*Id.* at PageID.376).

## Discussion

The relevance of the information on Plaintiff's iPhone 7 Plus, which Plaintiff traded away only three days before the hearing on the motion to compel its production, is beyond dispute. There are genuine material questions of fact about Plaintiff's whereabouts around the time of the alleged burglary, as well as communications he may have had during the relevant time period. Information from his cell phone is integral to answering those questions. That the information could not be obtained from Plaintiff's iCloud account confirms that fact.

Also undisputed is the fact that Plaintiff was on notice of the need to preserve the information on his cell phones. He was put on such notice as early as March 2017, when he received a letter from Defendant seeking all records from any cell phone Plaintiff used from November 20, 2016, through November 30, 2016, including call history details, text messages, and cell tower location information. (*See* 6/18/19 Hrg

Exh. A). That notice was renewed through Defendant's July 26, 2018, discovery requests, which sought call and texting logs, as well as text messages, for the relevant time periods.[5] (*See* Def's Interog. 6(f), (g), 6/18/19 Hrg Exh. B).

But, to the extent there was any question about Plaintiff's obligation to preserve the data from his cell phone, it was certainly put to rest at Plaintiff's November 2018 deposition. Defendant's counsel explicitly advised Plaintiff: "[Y]our phone and phones are evidence. And it's important that you don't erase anything, alter anything, destroy anything electronically or otherwise with regard to the phones. That's evidence and needs to be preserved. Okay?" (Pltf's Dep. at 7-8, ECF No. 28-1, PageID.125-26). Plaintiff then confirmed his understanding of that obligation. (*See id.* at PageID.126).

Plaintiff's actions less than three months later in disposing of the iPhone 7 Plus he possessed at the time of his deposition, when Defendant sought to access the data on that phone, is inexplicable. It is particularly troubling that Plaintiff disposed of that cell phone three days before the scheduled hearing on Defendant's motion to compel production of the data from that phone, and four days after the Court noticed that hearing. Moreover, plaintiff failed to advise the Court and Defendant's counsel of the fact that he no longer had the cell phone that was the subject of the hearing – an omission of obvious import.

---

[5] Plaintiff reported the theft of his iPhone 7 Plus cell phone three days before being served with these discovery requests.

Plaintiff's account of his actions in disposing of the iPhone 7 Plus on February 4, 2019, is simply not credible. It is, in fact, implausible. Plaintiff's contention that the iPhone 7 Plus was broken and unusable is belied by the Apple store receipt, which indicates that Plaintiff traded in an undamaged and fully functional iPhone 7 Plus for which the store agreed to pay him $300. Plaintiff's unsupported contention that an Apple store employee falsely represented the condition of the iPhone 7 Plus cell phone on the receipt, not to mention that the store would pay $300 for an unusable phone, defies logic. Regardless, Plaintiff had a duty to retain the iPhone 7 Plus cell phone – operational or not – until the Court had an opportunity to rule on the motion to compel.

It is uncertain whether Plaintiff retains – or regained – possession of the iPhone 7 Plus he reported stolen in July 2018. He has little credibility concerning the whereabouts and disposition of any of his cell phones. It is also unclear whether Plaintiff retains any of the data – in any form and on any medium – from either of his iPhone 7 Plus cell phones.

What is clear is that Defendant's motion to compel (ECF No. 55) is well-founded. Accordingly, the Court will grant the motion and order Plaintiff to produce any cell phone he used during the period November 20, 2016, through the present. The Court will also order Plaintiff to: (1) expend all reasonable efforts to regain possession of these cell phones to the extent they are no longer in his possession, (2) produce any other medium that may contain data from any of these cell phones, and (3) identify any and all locations, including but not limited to websites and cloud-

based or other data storage services, where data from the phones in question may be located.

Moreover, Rule 37(a) provides that, when a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED R. CIV. P. 37(a)(5)(A). The rule contains three exceptions to this mandate, *see* FED R. CIV. P. 37(a)(5)(A)(i)-(iii), none of which apply in this case. Accordingly, the Court will sanction Plaintiff in the form of awarding Defendant its reasonable costs in bringing the instant motion to compel (ECF No. 55), to include attorney's fees and the costs of the forensic analyst Brandon Fannon.

Defendant seeks sanctions against Plaintiff for violating the Court's February 7, 2019, order compelling Plaintiff to produce his phone for forensic analysis. Defendant contends that implicit in that order is a requirement that Plaintiff produce the cell phone that was in his possession at the time the motion to compel was filed. There is logic to that contention. But the Court will deny this part of the motion, choosing to give Plaintiff the benefit of the doubt on this issue. Plaintiff did produce the cell phone he possessed at the time the Court issued its order, so he is technically in compliance with that order.

While Plaintiff may not technically have violated this particular order, he nevertheless violated the spirit of the Court's order as well as intentionally violated his discovery obligations by disposing of the iPhone 7 Plus cell phone, to the detriment

of Defendant. Defendant reasonably sought to examine Plaintiff's cell phone to retrieve data relevant to Plaintiff's whereabouts and communications for the time period surrounding the alleged burglary of Plaintiff's home. When Plaintiff refused to allow that examination on the date of his deposition, Defendant successfully sought a Court order compelling that examination. By Plaintiff's own admission, the information from the cell phone he possessed at the time of the alleged burglary had been transferred to that iPhone 7 Plus.

The Court now knows that, due to Plaintiff's actions in disposing of that cell phone (and apparently not backing up that phone to Plaintiff's iCloud account), Defendant was deprived of the benefit of that Order. Plaintiff's failure to advise Defendant and the Court of those facts also resulted in an unnecessary hearing addressing the issues in the motion to compel, and in the useless expenditure of fees to have a forensic expert examine a device Plaintiff knew did not contain the information that was the subject of the motion to compel. Plaintiff's conduct evinces bad faith.

This Court has the inherent authority to sanction parties for engaging in bad-faith conduct. In *Goodyear Tire & Rubber Co. v. Haeger*, the Supreme Court held:

> Federal courts possess certain "inherent powers," not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." That authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process."

137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962) and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991), respectively).

Among the permissible sanctions is an assessment of attorney's fees and costs – an order requiring the party who has acted in bad faith to reimburse the legal fees and other costs incurred as a result of the bad faith conduct. *See Haeger*, 137 S. Ct. at 1186. The Supreme Court cautions, however, that such sanctions when imposed in civil litigation must be compensatory and not punitive in nature. *See id.* Accordingly, only those fees and costs that are actually caused by the misconduct are compensable. In other words, the Court should apply the "but-for" test. *See id.*

Applying that test to the facts of this case, the Court will sanction Plaintiff by awarding Defendant its reasonable costs associated with its efforts, after February 4, 2019 (the date Plaintiff disposed of his iPhone 7 Plus) to compel production of the data from Plaintiff's cell phones. These costs shall include attorney's fees and the fees and expenses associated with Mr. Fannon's forensic analysis of Plaintiff's iPhone XR and his iCloud account. To the extent these costs duplicate those awarded pursuant to Rule 37(a)(5)(A), above, they shall be excluded from this sanction.

Defendant's request to dismiss this case as a spoliation sanction pursuant to Rule 37(e)(2)(C) will be denied. While the Court finds that Plaintiff intentionally disposed of his iPhone 7 Plus on February 4, 2019, to avoid his discovery obligations, and while his actions were egregious, dismissal is unwarranted given the lack of previous sanctions or warnings. *See Bentkowski v. Scene Magazine*, 637 F.3d 689, 697 (6th Cir. 2011) (when fashioning a sanction for failure to cooperate in discovery, the Court must consider several factors including whether the party was warned that failure to cooperate could result in dismissal and whether less drastic sanctions were

19

previously imposed, also keeping in mind that dismissal of an action for failure to cooperate in discovery is a "sanction of last resort").

As for Defendant's request for a spoliation jury instruction under Rule 37(e)(2)(B), the undersigned judicial officer defers to Chief Judge Jonker. Jury instructions are best left to the trial judge.

## Conclusion

For the foregoing reasons, Defendant's motion to compel and for sanctions (ECF No. 55) will be granted in part, denied in part, and dismissed in part. The motion to compel will be granted, and the Court will compel production of Plaintiff's cell phones, any medium containing data from those phones, and the identity of any location where data from the phones in question may be located.

The motion for sanctions will be granted to the extent that the Court will award reasonable costs, including attorney's fees, associated with the filing of the motion, as well as the reasonable expenses incurred by Defendant after February 4, 2019, in an effort to compel production of the relevant data from Plaintiff's cell phones. The motion for sanctions will be dismissed without prejudice regarding the request for a spoliation jury instruction. The motion for sanctions will be otherwise denied.

Date: November 14, 2019

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge